e

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JEAN FORD, Plaintiff | CIVIL ACTION NO. 1:18-CV-00265 |
| VERSUS | UNASSIGNED DISTRICT JUDGE |
| UNION PACIFIC RAILROAD CO. Et al, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is "Plaintiff's Motion to Remand" (Doc. 9). Plaintiff, Jean Ford ("Ford"), moves to remand the instant lawsuit because (1) the Notice of Removal filed by Defendant, Union Pacific Railroad Company ("UPRR"), was procedurally defective; and (2) the Court does not have subject matter jurisdiction due to the absence of complete diversity of citizenship. Defendants, UPRR and Robert Gomez, oppose the motion. For the following reasons, the Motion to Remand (Doc. 9) should be DENIED.

I.   Background

On or about February 2, 2017, UPRR was operating a track "spiker" machine at the intersection of Ebony Street and the railroad. (Doc. 1-1, p.1, ¶ 4). Ms. Ford's son, Curtis Ford, who was deaf and speech-impaired, attempted to cross the railroad intersection on his bicycle, but was struck by the spiker machine, tragically ending his life. Id. ¶ 5. The spiker machine was one of twenty-eight machines being operated at the railroad intersection that day. (Doc. 9-3, p. 30:9-11). The crossing gate arms were down across the railroad track, and the warning

lights were flashing. (Doc. 1, ¶ 16). Ford alleges that Defendants failed to stake a lookout and flagman at the crossing which ultimately led to her son's death. (Doc. 1-1, ¶ 5).

Ford filed suit in state court for wrongful death and negligence. In addition to suing UPRR, she named as defendants three UPRR employees, Robert Gomez (a Texas resident), Kenneth Mallett (a Louisiana resident),[1] and Vyron Carter (a Louisiana Resident).[2] Gomez was operating the spiker machine at the time of the incident. Mallett was the foreman at the time of the incident. (Doc. 9-3, p. 8:15-25). Carter was the TSC facilitator who was allegedly responsible for safety concerns. (Id. p. 21:1-22). In her Petition, Ford alleges that all Defendants had a duty and an opportunity to prevent her son's death.

UPRR timely filed a Notice of Removal, and Plaintiff responded with the instant motion. UPRR's Notice of Removal was based on 28 USC §§ 1441 and 1446. In its Notice of Removal, UPRR asserts that at the time of removal, all parties were diverse. (Doc. 1, ¶ 18). UPRR also asserts that the three UPRR employees, Gomez, Mallett, and Carter, had not been properly served. Finally, UPRR maintains that Louisiana Defendants, Mallett and Carter, are fraudulently joined in this action for the sole purpose of defeating jurisdiction.

II. <u>Law and analysis</u>

---

[1] Defendant Mallet was erroneously referred to as Kenny Manly in the petition.
[2] Defendant Carter was erroneously referred to as Byron Carter in the petition.

In her Motion to Remand, Ford maintains that: (1) the Notice of Removal was procedurally defective because UPRR failed to obtain the consent of Defendant Gomez; and (2) Defendants Carter and Mallett were properly joined.

The basis of Ford's claims against the non-diverse Defendants is that the gates and lights at the crossing were inadequate to warn a bicyclist of oncoming rail traffic. Ford maintains that Defendants Carter and Mallett breached a personal duty by failing to adhere to UPRR's Rule 46.2.

A. <u>Fraudulent Joinder Standard</u>

Any civil action brought in a state court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions wherein the amount in controversy exceeds $75,000, exclusive of interest and costs, and involves citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties. <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. See <u>De Aguilar v. Boeing Co.</u>, 47 F.3d 1404, 1408 (5th Cir. 1995).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." <u>Smallwood v. Ill. Cent. R.R.</u>, 385 F.3d 568, 573 (5th Cir. 2004) (citing <u>Travis v. Irby</u>, 326 F.3d 644, 646–47 (5th Cir. 2003)).

3

Only the latter method is relevant here because no fraud is alleged. Thus, the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. The movant is therefore required to put forth evidence "that would negate a possibility of liability on the part of [the nondiverse defendant]." Davidson v. Georgia-Pacific, LLC, 819 F.3d 758, 767 (5th Cir. 2016) (quoting Travis, 326 F.3d at 650) (alterations in original). All contested issues of substantive fact and ambiguities in the controlling state law must be resolved in the plaintiff's favor. Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995).

In order to assess the plaintiff's possibility of recovery against the non-diverse defendant, courts must conduct "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant." Smallwood, 385 F.3d at 574. This inquiry "depends upon and is tied to the factual fit between the [plaintiff's] allegations and the pleaded theory of recovery." Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." Smallwood, 385 F.3d at 574.

In some cases, however, the analysis should advance past the standards of Rule 12(b)(6). Id. at 573. This is appropriate where the plaintiff "has stated a claim but has misstated or omitted discrete facts that would determine the propriety of joinder."

Id. "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. The summary inquiry is only appropriate "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant," and should not proceed into a resolution of the merits. Id. at 573–74. On a summary inquiry into improper joinder, the court must still resolve all ambiguities in the plaintiff's favor. Travis, 326 F.3d at 648–49.

## B. FRSA preemption

UPRR maintains that there is no reasonable basis for recovery against the non-diverse Defendants because they had no duty to place a flagman or lookout at the railroad crossing.

Ford maintains that if there had been a "lookout" or a "flagman," her son would not have been killed by the striker machine. She posits that even though the cross arms were down, and the warning lights were flashing, an additional "lookout" or "flagman" was required when UPRR was conducting track maintenance.

Ford maintains that Louisiana resident Defendants Mallet and Carter were not fraudulently joined because there is a reasonable possibility of recovery against them. Ford contends that the basis of her lawsuit against these non-diverse Defendants is that they negligently violated UPRR's own rules governing on-track equipment approaching grade crossings.

Rule 42.6 provides as follows:

> Track cars and on-track equipment must approach all grade crossings prepared to stop and must yield the right-of-way to vehicular traffic. At all crossings, proceed only when all lanes are visible, and it is safe to proceed,

5

>regardless of whether or not the crossing is activated. If necessary, flag the crossing to protect movement of a track car or equipment. If crossing is being flagged, proceed on flagger's instructions.[3]

Ford argues that UPRR owed a duty of care to her son which it delegated to its employees, Mallett and Carter. She then argues that Mallett and Carter breached that duty because they knew or should have known of the likelihood that vehicular traffic can and does circumvent gated crossings during the operation of track machines through railroad crossings.[4]

Mallet testified that it was his job to make sure the workers were doing their job as safely as possible. Mallet further testified as to his duty to the public:

Q. But that's not limited to the safety of the workers alone, is it? It also includes using common sense around the public.

A. Yes, sir.

Q. I mean, if he sees something that might endanger a bicyclist such as Mr. Ford, then he has a responsibility to the Union Pacific Railroad and to the public to take action, does he not?

A. Correct. (Doc. 14-4, p. 68:14-22).

Mallett also testified that Carter was responsible for both workers' safety and the public's safety. Id. (p. 21:9-17). Ford submits the deposition of Defendant Gomez who testified that he had observed vehicles go around the gates even when the spiker machine was close to the crossing. (Doc. 14-3, p. 42:20-24).

---

[3] Rule Updated Date: May 2, 2016.
[4] Ford relies on Mallett's deposition testimony, (Doc. 9-3, pp. 67-68, 74).

Ford asserts that it was foreseeable that the operation of the track machines posed a risk to pedestrians and vehicular traffic. Ford argues that Carter and Mallett had a duty to place a flagman at the crossing because they were either in charge of the work crew or in charge of jobsite safety.

Defendants maintain that the issue of the adequacy of the warning at the railroad crossing is preempted by the Federal Railroad Safety Act, 49 U.S. C. 20101 *et seq.* ("FRSA"). The Supremacy Clause to the United States Constitution provides that "the Laws of the United States … shall be the supreme Law of the Land." U.S. Constitution, Art. VI, Cl. 2. Congress has the power under the Supremacy Clause to preempt state law. Preemption may be express or implied. See <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n,</u> 505 U.S. 88, 98, 112 S.Ct. 2374 (1992).

The FRSA was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Title 49 U.S.C. § 20106 provides the scope of the FRSA's preemption:

> **(a) National uniformity of regulation.** -- **(1)** Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> **(2)** A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order- -

> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (C) does not unreasonably burden interstate commerce.
>
> **(b) Clarification regarding State law causes of action.** - - (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party - -
>
> > (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
> >
> > (B) has failed to comply with its own plan, rule or standard that it created pursuant to a regulation or ordered issued by either of the Secretaries; or
> >
> > (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.
>
> **(c) Jurisdiction.** - - Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

The United States Supreme Court held that whenever federal funds are used in the installation of warning devices at railroad crossings, the Federal Highway Administration ("FHWA") regulation on the adequacy of the devices governs, and

state tort law imposing an independent duty on a railroad to provide adequate warning devices at railway crossings is preempted under the FRSA. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S. Ct. 1732 (1993). Thus, under the FRSA, preemption flows from the regulation prescribed by the Secretary of Transportation (or his delegate, such as the FHWA). If the regulation "covering the subject matter of the State requirement" is applicable, then the state law duty is preempted. Id. at 665.

Under Easterwood, where federal funds are used in the upgrade of a railroad crossing, state law negligence claims against the railroad based upon an allegation that the crossing was not adequately protected is preempted by federal law. In Norfolk Southern RY. Co. v. Shanklin, 529 U.S. 344, 120 S.Ct. 1467 (2000), the Supreme Court held that the sole determinant of federal preemption is whether federal funds were used in the installation of devices under a project approved by FHWA.

In line with these precedents, in Union Pac. R.R. Co. v. Taylor Truck Line, Inc., 2017 WL 3013409 (W.D. La. July 13, 2017), reconsideration denied, 2017 WL 4052164 (W.D. La. Sept. 13, 2017), this Court held that plaintiff's claims of inadequate warning (specifically that a flagman should have been stationed at a crossing) were preempted by the FRSA. The court expressly stated that "if the warnings are adequate by virtue of federal law, then the argument that Union Pacific was negligent for failing to place a flagman at the Crossing is also preempted."

Ford argues that in addition to Taylor Truck Lines being distinguishable,[5] the relevant federal regulations such as the Federal Railroad Administration's grade crossings safety regulations in 49 C.F.R. 234 do not address roadway maintenance machine movements over grade crossings. Ford remarks that 49 C.F.R. part 214, subpart "C" does not address movement of roadway maintenance machines over grade crossings, but only addresses protections to prevent roadway workers from being struck by rolling equipment.[6]

Ford suggests that UPRR has failed to point to any relevant regulations promulgated by the Secretary of Transportation as to the safe operation of track maintenance over railroad crossings. In Zimmerman v. Norfolk Southern Corp., 706 F.3d 170, 177 (3rd Cir. 2013), the court determined that in light of the 2007 amendments to the FRSA preemption provision, a claimant "can avoid preemption by alleging a violation of either a "Federal standard of care" or the railroad's "own plan, rule, or standard that it created pursuant to a regulation or order." 49 U.S.C. § 20106(b)(1)(A)-(B).

Ford argues that UPRR Rule 42.6 establishes a specific duty owed to vehicular traffic when on-track equipment approaches a crossing. In addition to other pertinent allegations, Ford's Petition for Damages alleges that Mallet and Carter failed to "[e]nforce UPRR Rule 42.6 which requires track equipment to yield the right of way

---

[5] *Taylor* involved a failure to install a low clearance warning and to post a flagman at the crossing. Union Pac. R.R. Co. v. Taylor Truck Line, Inc., 2017 WL 3013409 (W.D. La. July 13, 2017), reconsideration denied, 2017 WL 4052164 (W.D. La. Sept. 13, 2017). Thus, at issue was the adequacy of warning devices installed at that particular crossing.
[6] See Federal Railroad Administration Safety Advisory No. 2016-01.

10

to vehicular traffic by not deploying a flagman." (Doc. 1-1,¶ 9 (c)). The Petition also alleges that Defendants were negligent in violating the "UPRR's rules that dictate that pedestrians and traffic have the right of way at a public crossings (sic) with stopped equipment," (Id. ¶ 7(b)) as well as "[p]rohibiting the spiker machine from moving when a bicyclist was present and attempting to cross the track." (Id. (c)).

The Court agrees with Defendants that the issue of adequate warnings at railroad crossings, when federally funded, is preempted. Ford's argument that there was a special duty in this case because it involved a spiker machine instead of a train is a distinction without a difference. The purpose of the flashing lights, the activated cross-arms, and the ringing bells is to inform vehicular traffic and pedestrians that the railroad crossing is not safe to cross. Federal law as to adequate warnings preempts any state law, and Defendants Mallet and Carter cannot be held liable because they had no duty or obligation to place a flagman at this railroad crossing.

C. The removal was otherwise proper under federal law?

Ford argues that the Notice of Removal was procedurally defective because it did not contain the individual written consent of Gomez. UPRR and Gomez maintain that the Motion to Remand should be denied because the non-diverse defendants were not served at the time of removal.

Removal is proper under 28 U.S.C. § 1441 even when one or more named defendants are not diverse, if the non-diverse defendants have not been served at the time of removal. Gross v. Old Republic Ins. Co., 2017 WL 6460054, at *1 (W.D. La. Dec. 18, 2017); Leech v. 3M Co., 278 F.Supp.3d 933, 943 (E.D. La. 2017); Colletti v.

11

Bendix, 2016 WL 770646, at *2 (E.D. La. Feb. 29, 2016); Harvey v. Shelter Ins. Co., 2013 WL 1768658, at *2 (E.D. La. Apr. 24, 2013). The "forum defendant rule" prohibits removal on diversity grounds only when "any of the parties in interest properly joined and served as defendant is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Defendants maintain that because Gomez, Carter, and Mallett were not served with Plaintiff's Petition for Damages at the time of UPRR's removal, complete diversity exists, and the forum defendant rule does not prohibit removal. Ford has not argued or submitted evidence that Carter and Mallett were served. Thus, their consent was not required.

However, Ford argues that Gomez was properly served when CT Corporation, UPRR's registered agent, accepted service of process on Gomez' behalf as an employee of UPRR. Ford remarks that Gomez is represented and shares counsel with UPRR.

Federal Rule of Civil Procedure 4(e)(1) states that an individual can be served within a judicial district pursuant to state law of the state where the district court is located. Louisiana Code of Civil Procedure article 1203 provides that "[w]hen one person is the legal representative of several persons made defendant in the same cause, only one citation need be addressed to such representative." Alternatively, Federal Rule of Civil Procedure 4(e)(2)(c) states that service of process may be accomplished by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Ford argues that because Defendant Gomez did not consent to removal, the removal was procedurally defective. The Court disagrees. Attached to the Notice of

12

Removal is the Petition for Damages filed by Ford in the state court. Significantly, the Court notes the following request made by counsel for Plaintiff:

> **CLERK: PLEASE WITHHOLD SERVICE on the defendants, BYRON CARTER, KENNY MANLEY, AND ROBERT GOMEZ, until their service addresses are discerned.**

The Petition for Damages expressly requests that Defendants Carter, Manly, and Gomez not be served. (Doc. 1-1, p. 6). In the Notice of Removal, counsel for UPRR asserts that Gomez has not been served. (Doc. 1, ¶ 3). Plaintiff's counsel argues that Defendant Gomez was served when UPRR was served through its agent for service of process. On one hand, Plaintiff's counsel argues that Gomez was properly served when CT Corporation accepted service for UPRR because UPRR's counsel represents both UPRR and Gomez. On the other hand, counsel argues that the removal was defective because that same counsel for UPRR removed the case but failed to obtain Gomez' consent. The Court finds that there was no procedural defect as to the Notice of Removal.

### III. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that the Motion to Remand (Doc. 9) be **DENIED** and that Defendants Kenneth Mallett and Vyron Carter be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen

(14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this __27th__ day of November, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge